## BALLOON REAL ESTATE LIEN NOTE

### DISCLOSURE

THIS LOAN IS PAYABLE IN FULL ON OR BEFORE SEPTEMBER 6, 2005. AT MATURITY YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE AND UNPAID INTEREST THEN DUE. THE PAYEE IS UNDER NO OBLIGATION TO REFINANCE THIS NOTE AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE PAYEE WHERE YOU HAVE THIS NOTE AT MATURITY. YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME PAYEE.

THE PAYEE, AT ITS OPTION MAY CONSIDER AN APPLICATION TO REFINANCE THE BALLOON PAYMENT CONVERTING THIS NOTE TO TERM OF YEARS TO BE DETERMINED AT THE TIME OF APPLICATION TO A RATE OF INTEREST AS THEN BEING OFFERED BY THE PAYEE. THE PAYEE WILL NOT CONSIDER AN APPLICATION UNLESS THE FOLLOWING CONDITIONS ARE SATISFIED: (1) NO DEFAULT, PRIOR OR CURRENT, EXISTED OR EXISTS WITH THIS NOTE OR ANY DOCUMENT EXECUTED IN CONNECTION HEREWITH; (2) YOU MUST MAKE APPLICATION NO LATER THAN FORTY-FIVE (45) DAYS PRIOR TO THE MATURITY DATE OF THIS NOTE, (3) YOU MUST PAY ALL CHARGES AND COSTS OF PAYEE ASSOCIATED WITH THE NEW LOAN, INCLUDING, BUT NOT LIMITED TO DISCOUNT POINTS, CLOSING COSTS AND PREPAIDS; (4) YOU MUST QUALIFY FOR THE NEW LOAN BASED UPON THE THEN EXISTING PROGRAM REQUIREMENTS, INCLUDING, BUT NOT LIMITED TO A REVIEW OF TITLE AND APPRAISED VALUE OF THE PROPERTY, LOAN TO VALUE RATIOS AND CREDITWORTHINESS.

| | |
|---|---|
| DATE: | SEPTEMBER 6, 2000 |
| MAKER: | MERIH N. ZAPATA dba WYNDEHAVEN TERRACE |
| PAYEE: | HOUSTON SAVINGS BANK, ssb |
| PLACE FOR PAYMENT: | 4550 POST OAK PLACE, SUITE 225<br>HOUSTON, TEXAS 77027 |
| PRINCIPAL AMOUNT: | THREE HUNDRED SEVENTY EIGHT THOUSAND NINE HUNDRED FIFTY SIX AND 27/100 ($378,956.27) DOLLARS |
| ANNUAL INTEREST RATE OF UNPAID PRINCIPAL FROM DATE OF FUNDING: | THE WALL STREET JOURNAL'S PRIME LENDING RATE AS IT VARIES PLUS ONE AND ONE-QUARTER (1.25%) PERCENT PER ANNUM AND TO BE ADJUSTED QUARTERLY AS SET FORTH HEREINAFTER. |
| TERMS OF PAYMENT: | This Note shall be due and payable on demand, and if demand is not earlier made, then subject to the recapture paragraph set forth hereinafter, this Note shall be payable in monthly installments of principal and interest of at least $3,886.60 commencing with such payments on or before October 6, 2000 and continuing regularly and on the same day of each month thereafter until September 6, 2005 when the entire balance of this Note, principal and interest then remaining unpaid, shall be due and payable in full. |
| ANNUAL INTEREST RATE ON MATURED, UNPAID AMOUNTS: | ALL PAST due principal and interest shall bear interest until paid at the rate of eighteen (18%) per annum. Alternatively, Payee may charge and collect a late fee of five percent (5%) of any scheduled installment more than ten (10) days past due. |
| SECURITY FOR PAYMENT: | A TRACT OF LAND CONTAINING 3.8 ACRES OUT OF LOTS 7 AND 8, IN BLOCK 1, OF INDEPENDENCE GROVE, IN HARRIS COUNTY, TEXAS, ACCORDING |



EXHIBIT 1

TO THE MAP OR PLAT THEREOF, RECORDED IN VOLUME 3, PAGE 39A OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF. ALL ACCOUNTS RECEIVABLE, FURNITURE, EQUIPMENT AND INVENTORY NOW OWNED OR HEREAFTER ACQUIRED BY MERIH N. ZAPATA dba WYNDEHAVEN TERRACE; AND ASSIGNMENT OF JACKSON NATIONAL LIFE INSURANCE COMPANY'S POLICY NO. 0025323008, ISSUED UPON THE LIFE OF MERIH ZAPATA IN THE AMOUNT OF $400,000.00

**RECAPTURE:**

The principal and interest payment schedule recited above has been calculated on a twenty (20) year amortization of the principal amount hereof, based on an estimated interest rate of ten and three-quarter (10.75%) percent per annum. The Maker expressly agrees that the use of this amortization term and the estimated interest rate in the calculation of the payment schedule shall in no way affect the actual maturity date or limit the actual interest charged on this Note as provided and calculated above. In the event the monthly payments provided above are insufficient to pay the scheduled principal payment under the desired amortization schedule, the Maker agrees that the Payee may, in its sole discretion, and every three (3) months from the date of this Note, recalculate the amount of the principal and interest payments specified above so as to provide for a monthly payment sufficient to maintain the scheduled principal reduction of this Note, together with the payment of all accrued interest, as provided in the initial amortization schedule referenced above.

This Note is secured by a Deed of Trust and Security Agreement of even date herewith covering the above described property.

Maker promises to pay to the order of Payee at the place for payment and according to the terms of payment the principal amount plus interest at the rates stated above. All unpaid amounts shall be due by the final scheduled payment date.

On default in the payment of this Note or in the performance of any obligation in any instrument securing, or executed in connection with this Note, obligations in all instruments securing, or executed in connection with, this Note shall become immediately due at the election of Payee. Maker and each surety, endorser, and guarantor waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, protests, and notices of protest. If default occurs in connection with any other indebtedness now or hereafter owing by Maker, or by any co-maker, endorser or guarantor hereof, or if for any reason Payee, in good faith believes that repayment of this Note in full is unlikely or insecure, then the owner and holder of this Note may, without notice or demand, declare all sums owing hereon at once due and payable.

PAYEE shall have a first lien on all deposits and other sums at any time credited by or due from Payee to Maker, or any co-maker, signer, endorser, surety or guarantor hereof as collateral security for the payment of this Note, and Payee, at its option, may at any time, without notice and without any liability, retain all or any part of any such deposits or other sums until all sums owing on this Note have been paid in full and/or apply or set off all or any part of any such deposits or other sums credited by or due from Payee to or against any sums due on this Note in any manner and in any order of preference which Payee, in its sole discretion chooses.

If this Note or any instrument securing or collateral to it is given to an attorney for collection or enforcement, or if suit is brought for collection or enforcement, or if it is collected or enforced through probate, bankruptcy, or other judicial proceeding, or if Maker sues any holder in connection with this Note or any related documents and does not prevail, then Maker shall pay Payee reasonable attorney's fees in addition to other amounts due. Reasonable attorney's fees shall be ten percent (10%) of all amounts due unless either party pleads otherwise.

Interest herein shall be computed on a 360 day basis, but nothing in this Note shall authorize the collection of interest in excess of the highest rate allowed by law. If interest is computed on the per annum basis of a year of 360 days, and if such calculation would result in a usurious rate, then said interest shall be calculated on the per annum basis of 365 or 366 days, as the case may be.

Nothing in this Note shall authorize the charging or collection of interest in excess of the highest rate allowed by law. This Note and the maximum rate of nonusurious interest applicable to the loan evidenced by this Note, shall be governed by the laws of the United States of America and the State of Texas in effect on the date of the loan evidenced by this Note, and, to the extent allowed by law, as now or as may hereafter be in effect, but in any event Tex. Rev. Civ. Stat. Ann. art. 5069 ch 15 (which regulates certain revolving credit loan accounts and revolving triparty accounts) shall not apply to the loan evidenced by this Note. For the purposes hereof, "interest" shall include the aggregate of all charges, which constitute interest under such laws, that are contracted for, reserved, taken, charged or received under this Note. In furtherance thereof, the Maker and the Payee stipulate and agree that none of the terms and provisions contained in this Note or any other related loan document executed in connection herewith shall ever be construed to create a contract to pay for the use, forbearance or detention of money with interest at a rate in excess of the "Highest Lawful Rate". In the event the Payee or any other holder of this Note ever charges or contracts for any amount in excess

2

of lawful interest, the documents or instruments constituting such charge or contract shall be *ipso facto* modified without any further action by any person so that no amount in excess of lawful interest shall be charged or contracted for. If the Payee or any other holder of this Note ever receives, collects or applies as Interest, any amount in excess of lawful interest, such amount which would be excessive Interest shall be applied to the reduction of the unpaid principal balance of this Note, and, if upon such application the principal balance of this Note is paid in full, any remaining excess shall be forthwith paid to the Maker. In determining whether or not the Interest paid or payable under any specific contingency exceeds the "Highest Lawful Rate", the Maker and the Payee shall, to the maximum extent permitted under applicable law, (a) treat all Loans as but a single extension of credit (and the Maker and the Payee agree that such is the case and that provision herein for multiple loans and Notes is for convenience only), (b) characterize any nonprincipal payment as an expense, fee or premium rather than as Interest, (c) exclude voluntary prepayments and the effects thereof, and (d) "spread" the total amount of Interest throughout the entire contemplated term of the loans. The provisions of this paragraph shall control over all other provisions of the other related loan documents which may be in apparent conflict herewith. If this Note bears Interest at a varying rate, unless changed in accordance with law, the applicable method of calculating the usury ceiling rate under Texas law shall be the indicated ceiling rate from time to time in effect, as provided in Tex. Rev. Civ. Stat. Ann. art. 5069-1.04, as amended, at any time the Interest rate reflected on the face of this Note exceeds the "Highest Lawful Rate", this Note shall bear Interest at the "Highest Lawful Rate" until the total amount of Interest accrued on this Note equals the total amount of Interest which would have accrued if the Interest rate on the face of this Note had been in effect at all times.

The terms "Prime Rate" and/or "Base Rate" mean the fluctuating per annum lending rate of interest from time to time announced as the highest prime lending rate published in THE WALL STREET JOURNAL, as it varies from time to time and being defined therein as being "the base rate on corporate loans at large U. S. money center commercial banks". Maker acknowledges that the Prime Rate and/or Base Rate is known to or readily ascertainable by Maker. Any interest rate change shall be effective at the beginning of each quarter-annual period during the term of this Note, with the first of such possible rate change occurring three (3) months from the date of this Note.. Base Rate may sometimes be referred to as the prime lending rate. The use of the terms shall not constitute a representation of the Lender and/or Payee as to a rate of interest that any Borrower or class of Borrower shall necessarily be entitled. On days when The Wall Street Journal is not published, the "Prime Rate" and/or "Base Rate" shall be the highest prime lending rate stated in the most recently published edition of The Wall Street Journal. In the event that The Wall Street Journal ceases to be published, or ceases to publish the prime lending rate, then Lender, its assigns or successors, shall establish and use a new "Prime Rate" and/or "Base Rate" which closely approximates the "base rate on corporate loans at large U.S. money center commercial banks".

All payments made hereon shall be applied first to accrued and unpaid interest, the balance to principal.

Payee reserves the right, in its sole discretion, without notice to Maker, to sell participations or assign its interest, or both, in all or any part of this Note.

This Note may be prepaid in whole or in part at any time, without the payment of any premium or fee.

Each Maker is responsible for the entire amount of this Note.

The terms Maker and Payee and other nouns and pronouns include the plural if more than one. The terms Maker and Payee also include their respective heirs, personal representatives, successors and assigns.

MAKER:

_____
MERIH N. ZAPATA dba WYNDEHAVEN TERRACE

3

# EXHIBIT "A"

3.000 acres of land out of Lots Seven (7) and Eight (8), in Block One (1) of Independence Grove Subdivision, plat of same being recorded in Volume 3, Page 39 of the Harris County, Texas, Map Records, and being a part of that certain 5.00 acre tract of land described in Harris County Clerks File No. D-431317, and being situated in the W. C. RR. Co. Survey, Section #1, Abstract Number 932, in Harris County, Texas, said 3.00 acre tract being more particularly described by metes and bounds as follows:

COMMENCING at a 5/8 inch iron rod found in the Northeasterly line of Cutten Road, based on a 55 foot right-of-way, said point being N 57 54' 54" E, 26.40 feet from the original Northwesterly corner of said Lot 7 and Southwesterly corner of Lot 6 of said subdivision;

THENCE S 31 18' 00" E, a distance of 132.36 feet along the said Northeasterly line of Cutten Road to a 5/8 inch capped iron rod set, marking the Northwesterly corner and POINT OF BEGINNING for the herein described tract;

THENCE N 58 03' 14" E, a distance of 658.53 feet to a 5/8 inch iron rod found in a hog wire fence on the common line between said Lots 7 and 10, said point being the Northeasterly corner of the herein described tract;

THENCE S 31 17' 24" E, along said hog wire fence line a distance of 198.27 feet to a found 1 inch iron pipe marking the Southeasterly corner of the herein described tract;

THENCE S 58 01' 53" W, a distance of 658.80 feet to a 5/8 inch iron rod found in the said Northeasterly line of Cutten Road, said point being the Southwesterly corner of the herein described tract;

THENCE N 31 18' 00" W, along the said Northeasterly line of Cutten Road a distance of 198.53 feet to the POINT OF BEGINNING.

NOTE: The Company does not represent that the above acreage or square footage calculations are correct.