**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | BANKRUPTCY CASE NO. |
| | § | |
| JOSEPH V. ZAPATA and | § | 09-37614-H3-11 |
| MERIH O. ZAPATA, | § | |
| DEBTORS | § | Chapter 11 |
| | § | |
| AND | § | |
| | § | |
| WYNDEHAVEN TERRACE | § | 09-39354-H1-11 |
| BANQUET FACILITIES, INC. | § | |
| DEBTOR | § | Chapter 11 |

DEBTORS' PLAN OF REORGANIZATION

COME NOW WYNDEHAVEN TERRACE BANQUET FACILITIES, INC. and JOSEPH V. ZAPATA and MERIH O. ZAPATA, Debtors herein, who propose this Plan of Reorganization.

INTRODUCTION

Debtors WYNDEHAVEN TERRACE BANQUET FACILITIES, INC. and JOSEPH V. ZAPATA and MERIH O. ZAPATA filed voluntary petitions under Chapter 11 of Title 11 of the United States Code on December 7, 2009 and October 6, 2009, respectively. Debtors sought protection under the Bankruptcy Code to preserve the assets of their estates for the benefit of all of their creditors and to have the opportunity to reorganize their financial affairs.

I.

DEFINITIONS

The following terms and definitions shall apply throughout this plan except where the context requires otherwise:

1.      **"Bankruptcy Code"** is the United States Bankruptcy Code of 1978 as contained in Title 11 U.S.C. § et seq. as amended.

1

2.      **"Bar Date"** is the deadline established by the Court for filing any proof of claim; after which any proof of claim filed will have no effect on this Plan and no right to participate with other Creditors under the plan.

3.      **"Claim"** shall mean a valid right to payment from the Debtors' Estates, and such right to payment is evidenced by a proof of claim filed by the Bar Date and allowed by the Court, or if a proof of claim is not filed by the Creditor, such right to payment may occur for a debt which otherwise appears on the Debtors' most recently revised bankruptcy schedules and (i) is not listed as disputed, contingent or unliquidated, or (ii) has not been resolved by Final Order of the Court in these reorganization cases.

4.      **"Class"** shall mean any class into which claims are classified pursuant to Section II.

5.      **"Confirmation"** shall mean the entry by the Bankruptcy Court of an order confirming the Plan in accordance with Chapter 11 of the Bankruptcy Code.

6.      **"Confirmation Date"** shall mean the date set by the Court pursuant to § 1128 of the Bankruptcy Code for the hearing on confirming the Plan for which the Court determines that the Plan meets the requirements of Chapter 11 of the Bankruptcy Code and is entitled to confirmation.

7.      **"Creditors"** shall mean all Creditors of the Debtors holding claims for debts, liabilities, demands or claims of any character whatsoever, as defined in § 101 (10) of the Bankruptcy Code.

8.      **"Court"** shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, presiding over the reorganization case, or, if necessary, the United States District Court for said District and Division having original jurisdiction over the reorganization case.

9.      **"Debtors"** or **"Debtor"** shall mean WYNDEHAVEN TERRACE BANQUET FACILITIES, INC. and JOSEPH V. ZAPATA and MERIH O. ZAPATA.

10.     **"Effective Date"** shall mean the 15th day following the order confirming the Plan, if no notice of appeal is timely filed, or if notice of appeal is filed, during which time no motion for stay pending appeal is granted or supersedeas bond is approved and filed; but, in the event a stay is granted or supersedeas bond is approved and filed, then it shall be the date on which the order confirming the Plan is a final order.

11.     **"Final Decree"** shall mean the order of the Court entered after all payments and distributions of monies called for under the Plan have been made (i) discharging the Trustee and

canceling his bond, (ii) making provisions by injunction or otherwise as may be equitable, and (iii) closing the reorganization case.

12.     **"Final Order"**  shall mean an order of the Court which, not having been reversed, modified or amended and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become conclusive of all matters adjudicated thereby and is in full force and effect.

13.     **"Lien"**  shall mean mortgage, pledge, judgment lien, security interest, charging order, or other charge or encumbrance on property which is effective under applicable law as of the date of the commencement of the reorganization case.

14.     **"Payment Due Date"**  shall mean the first day of the first month following sixty (60) days after the "Effective Date" of the Plan.

15.     **"Plan"**  shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

16.     **"Secured Claim"**  shall mean the Claim of any Creditor secured by liens on property, which liens are valid, perfected, and enforceable under applicable law, and are not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and are duly established in this case, to the extent of the value of the security, as determined in accordance with Bankruptcy Code § 506 of the Bankruptcy Code.

17.     **"Allowed Amount"**  shall mean the dollar amount of a Claim approved and allowed by Final Order of the Bankruptcy Court.

18.     **"Unsecured Claims"**  shall mean all claimants, of any nature, holding Claims for unsecured debts, liabilities, demands or Claims of any character whatsoever.

19.     **"Unsecured Creditor"**  shall mean the holder of an Unsecured Claim.

## II.

### SUMMARY OF CLAIMS AND ASSETS

A.    <u>Pre-Petition Liabilities</u>.    The prepetition liabilities scheduled by Debtors are reflected in Exhibit "A" attached hereto.

B.    <u>Post-Petition Liabilities</u>.    Debtors have additional claims postpetition but are in the process of bringing them current.  All quarterly fees owed to the United States Trustee have been brought current. Debtors will continue to pay the U.S. Trustee fees quarterly until this case is closed.

The Reorganized Debtors shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as this Bankruptcy Court enters a final decree closing these Chapter 11 cases, or enters an order either converting these cases to cases under Chapter 7 or dismissing these cases.  After confirmation, the Reorganized Debtors shall file with the Bankruptcy Court and shall serve on the United States Trustee financial reports for each quarter, or portion thereof, that these Chapter 11 cases remain open in a format prescribed by the United States Trustee.

C.    <u>Pending Litigation and Contingent Liabilities</u>.    There is no pending litigation against the Debtors and none is expected to ensue in the future.

D.    <u>Assets of Debtors</u>.    Schedules A and B are attached as Exhibit "B" showing the assets of the Debtors at the petition date.

### VII.

### LIQUIDATION ANALYSIS

Typically, a liquidation of a Debtor's assets is handled under Chapter 7 of the Bankruptcy Code.  In such a case, a Chapter 7 Trustee is appointed who seizes control and possession of the estate's assets, liquidates them, and then pays creditors from the proceeds available.   The liquidation analyses for the Debtors are attached hereto as Exhibit "C".

### VIII.

### ACCOUNTING METHOD OF DEBTOR

The Debtors keep their books and records on a cash basis rather than on an accrual basis.

IX.

PREFERENCES, FRAUDULENT TRANSFERS AND OTHER VOIDABLE TRANSFERS

The Debtors have reviewed their books and records and have determined that no causes of action exist for preference, fraudulent transfers or other voidable transfers.

X.

SUMMARY OF PLAN

The following summary of certain provisions of the Plan does not purport to be complete. The provisions of the Plan, including definitions of certain terms which are incorporated by reference as a part of the summary, are terms which are qualified in their entirety by such reference.

A.    Identity of Proponents.  Joseph V. Zapata, Merih O. Zapata and Wyndehaven Terrace Banquet Facilities, Inc. are the Debtors and proponents of the Plan.  The Plan was filed contemporaneously with this Disclosure Statement.

B.    Classification and Treatment of Claims.   The Plan establishes four classes of claims and interests for each Debtor.  Such classes of claims and interests are outlined below.

**WYNDHAVEN TERRACE BANQUET FACILITES, INC CLAIMS**

Class 1

Administrative Claims

Margaret M. McClure

Claim of Margaret M. McClure, Attorney at Law, for representing the Debtor in this matter under 11 U.S.C. §507.  Ms. McClure holds $10,000 in a retainer (after paying the filing fee of $1,039.00) to apply toward her fees and expenses. Ms. McClure will file a fee application for her fees and expenses incurred on behalf of WYNDEHAVEN TERRACE BANQUET FACILITIES, INC.  It is anticipated that after her retainer is applied, Ms. McClure's total fees and expenses will be approximately $20,000.   If WYNDEHAVEN TERRACE BANQUET FACILITIES, INC. does not pay these fees and expenses in full on the Effective Date, after Court approval, any payment arrangement between Ms. McClure and WYNDEHAVEN TERRACE BANQUET FACILITIES, INC. will be over a time period agreed to by the parties.

### U.S. Trustee Fees

All U.S. Trustee fees owed by this Debtor will be paid timely by WYNDEHAVEN TERRACE BANQUET FACILITIES, INC. through the closing of this proceeding.

### Class 1 Claims are not impaired

### Class 2 – (a)

### Secured Creditors

### Harris County

Harris County is owed $2,285.00 in ad valorem taxes.  This creditor will be paid in full its principal claim plus 12% interest in equal monthly payments of $50.83 beginning on the first day of the first month following sixty (60) days after the Effective Date of the Plan, and ending sixty (60) months after the date of the order of relief. Retained jurisdiction for taxes; enforcement remedies.  Notwithstanding anything in this Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to any such claims except for (1) resolving the amount of any such tax claim arising prior to confirmation, and (2) enforcing the discharge provision of the Plan. A failure by the Reorganized Debtor to make a payment to the tax creditors pursuant to the terms of the Plan shall be an Event of Default as to such payments within ten (10) days after receipt of written notice of default from the tax creditors, then the tax creditors may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the tax creditors may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

### Cypress-Fairbanks ISD

This creditor filed a claim for $6,413.27 in ad valorem taxes.  This creditor will be paid in full its principal claim plus 12% interest in equal monthly payments of $142.66 beginning on the first day of the first month following sixty (60) days after the Effective Date of the Plan, and ending sixty (60) months after the date of the order of relief. Retained jurisdiction for taxes; enforcement remedies.  Notwithstanding anything in this Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to any such claims except for (1) resolving the amount of any such tax claim arising prior to confirmation, and (2) enforcing the discharge provision of the Plan. A failure by the Reorganized Debtor to make a payment to the tax creditors pursuant to the terms of the Plan shall be an Event of Default as to such payments within ten (10) days after receipt of written notice of default from the tax creditors, then the tax creditors may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the tax creditors may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

Class 2 – (b)

Secured Creditors

Trustmark National Bank

This creditor filed claims in the amount of $9,837.90 and $18,825.00.  This creditor will be paid in full the secured portion of its claims in the amount of $14,026.73 plus 5.25% interest in sixty (60) equal monthly payments of $266.32, beginning on the first day of the first month following sixty (60) days after the Effective Date of the Plan.

Class 2 Claims are impaired

Class 3

Priority Claims

Texas Comptroller of Public Accounts

This creditor filed two claims for $2,632.45 and $842.61.  This creditor will be paid in full the principal amount owed plus 8% interest in sixty (60) equal monthly payments of $70.47, beginning on the first day of the first month following sixty (60) days after the Effective Date of the Plan.

Internal Revenue Service

This creditor filed two claims for $44,731.65 and $13,204.01.  This creditor will be paid in full the principal amount owed plus 4% interest in sixty (60) equal monthly payments of $1,066.98, beginning on the first day of the first month following sixty (60) days after the Effective Date of the Plan.

Texas Workforce Commission

This creditor filed two claims for $353.03 and $289.40.  This creditor will be paid in full the principal amount owed plus 4% interest in sixty (60) equal monthly payments of $11.84, beginning on the first day of the first month following sixty (60) days after the Effective Date of the Plan.

The Class 3 Claims are not impaired

Class 4

General Unsecured Claims

These creditors will be paid on a pro rata basis 20% of the Debtor's net profits, if any, each year for 5 years.  For the calendar year 2011, 20% of net profits will be paid to these creditors pro rata in 12 equal monthly payments beginning September 15, 2012.  For the calendar years 2012, 2013, 2014 and 2015, these creditors will be paid on a pro rata basis 20% of the Debtor's net profits each of those years in 12 equal monthly pmts beginning September 15 of each of those years.

The Class 4 Claims are impaired

Any claim in Class 4 may be paid in accordance with any agreement for waiver, deferral, installment payment or otherwise as agreed between the holder of any such claim and the Debtors in an amount less than, but not greater than, specified herein.  Any such agreement made prior to the Effective Date will be made the subject of a motion to compromise filed with the Court and notice to the creditors and all other parties in interest who have filed with the Court requests for receipt of all notices, in accordance with § 102 of the Bankruptcy Code and Bankruptcy Rules 2002 and 2019(a) and Local Rule 2002, upon five (5) days notice, without the necessity of modification of the Plan.

## JOSEPH V. ZAPATA & MERIH O. ZAPATA CLAIMS

Class 1

Administrative Claims

Mills & Henshaw, PLLC

Claim of Mills & Henshaw, PLLC, for representing Debtors Joseph V. Zapata and Merih O. Zapata.  Mills & Henshaw, PLLC holds $9,961.00 in a retainer (after paying the filing fee of $1,039.00) to apply towards its' fees and expenses.  Mills & Henshaw, PLLC will file a fee application for its fees and expenses incurred on behalf of Joseph V. Zapata and Merih O. Zapata. It is anticipated that, after all retainers are applied, Mills & Henshaw's total fees and expenses will be approximately $20,000.00.  If Joseph V. Zapata and Merih O. Zapata do not pay these fees and expenses in full on the Effective Date, after Court approval, any payment arrangement between Mills & Henshaw, PLLC and Joseph V. Zapata and Merih O. Zapata will be over a time period agreed to by the parties.

<u>U.S. Trustee Fees</u>

All U.S. Trustee fees owed by this Debtor will be paid timely by Joseph V. Zapata & Merih O. Zapata through the closing of this proceeding.

<u>Class 1 Claims are not impaired</u>

<u>Class 2 – (a)</u>

<u>Secured Creditors</u>

<u>Harris County</u>

Harris County has filed a claim for $10,176.00 for ad valorem taxes. This creditor will be paid in full its principal claim plus 12% interest in equal monthly payments of $226.36 beginning on the first day of the first month following sixty (60) days after the Effective Date of the Plan, and ending sixty (60) months after the date of the order of relief. <u>Retained jurisdiction for taxes; enforcement remedies.</u> Notwithstanding anything in this Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to any such claims except for (1) resolving the amount of any such tax claim arising prior to confirmation, and (2) enforcing the discharge provision of the Plan. A failure by the Reorganized Debtor to make a payment to the tax creditors pursuant to the terms of the Plan shall be an Event of Default as to such payments within ten (10) days after receipt of written notice of default from the tax creditors, then the tax creditors may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the tax creditors may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

<u>Montgomery County</u>

Montgomery County has filed a claim for $985.93 for ad valorem taxes. This creditor will be paid in full its principal claim plus 12% interest in equal monthly payments of $21.93 beginning on the first day of the first month following sixty (60) days after the Effective Date of the Plan, and ending sixty (60) months after the date of the order of relief. <u>Retained jurisdiction for taxes; enforcement remedies.</u> Notwithstanding anything in this Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to any such claims except for (1) resolving the amount of any such tax claim arising prior to confirmation, and (2) enforcing the discharge provision of the Plan. A failure by the Reorganized Debtor to make a payment to the tax creditors pursuant to the terms of the Plan shall be an Event of Default as to such payments within ten (10) days after receipt of written notice of default from the tax creditors, then the tax creditors may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the tax creditors may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

Tax Ease

This creditor filed a claim for $54,327.62 for ad valorem property taxes.  This creditor will be paid in full its principal claim plus 5.25% interest in equal monthly payments of $1,031.47 beginning on the first day of the first month following sixty (60) days after the Effective Date of the Plan, and ending sixty (60) months after the date of the order of relief. Retained jurisdiction for taxes; enforcement remedies.  Notwithstanding anything in this Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to any such claims except for (1) resolving the amount of any such tax claim arising prior to confirmation, and (2) enforcing the discharge provision of the Plan. A failure by the Reorganized Debtor to make a payment to the tax creditors pursuant to the terms of the Plan shall be an Event of Default as to such payments within ten (10) days after receipt of written notice of default from the tax creditors, then the tax creditors may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the tax creditors may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

Cypress-Fairbanks ISD

This creditor filed a claim for $11,367.00 for ad valorem property taxes.  This creditor will be paid in full its principal claim plus 12% interest in equal monthly payments of $252.86 beginning on the first day of the first month following sixty (60) days after the Effective Date of the Plan, and ending sixty (60) months after the date of the order of relief. Retained jurisdiction for taxes; enforcement remedies.  Notwithstanding anything in this Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to any such claims except for (1) resolving the amount of any such tax claim arising prior to confirmation, and (2) enforcing the discharge provision of the Plan. A failure by the Reorganized Debtor to make a payment to the tax creditors pursuant to the terms of the Plan shall be an Event of Default as to such payments within ten (10) days after receipt of written notice of default from the tax creditors, then the tax creditors may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the tax creditors may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

Class 2 – (b)

Secured Creditors

Ford Motor Credit

This creditor filed a claim for $4,679.39 on a 2006 Ford Focus.  The Debtor will begin making regular monthly payments pursuant to the contract on this vehicle on the first day of the

first month following 60 days from the Effective Date of the Plan, and will pay all arrears in full in 60 equal monthly payments.

### Well Fargo Auto Finance

This creditor filed a claim for $14,588.02 on a 2008 Ford Focus. The Debtor will begin making regular monthly payments pursuant to the contract on this vehicle on the first day of the first month following 60 days from the Effective Date of the Plan, and will pay all arrears in full in 60 equal monthly payments.

### Harley Davidson Financial

This creditor filed a claim for $8,524.04 on a 2007 Harley Davidson motor cycle. The Debtor will begin making regular monthly payments pursuant to the contract on this vehicle on the first day of the first month following 60 days from the Effective Date of the Plan, and will pay all arrears in full in 60 equal monthly payments.

### Systems and Services Technologies, Inc.

This creditor filed a claim for $13,868.92 on a 2008 Harley Davidson motor cycle. The Debtor will begin making regular monthly payments pursuant to the contract on this vehicle on the first day of the first month following 60 days from the Effective Date of the Plan, and will pay all arrears in full in 60 equal monthly payments.

### Trustmark National Bank

This creditor is owed $13,223.89 on the Debtors' homestead. The Debtor believes that the claim is not secured properly against the homestead and therefore it will be objected to.

### Class 2 – (c)

Secured Creditors

### Trustmark National Bank

This creditor has filed two claims totaling $833,562.92. This creditor's claims will be bifurcated into secured and unsecured. The secured portion is $627,517.56 based on the value of Debtors' non-exempt assets and the amounts owed to the taxing authorities. The Debtors will pay $3,322.00 per month in 60 equal monthly payments on this secured claim. In month 61 this claim amount will be paid in full, after it is re-amortized with 5.25% interest.

Class 2 Claims are impaired

<u>Class 3</u>

<u>Priority Claims</u>

There are no priority claims.

<u>The Class 3 Claims are not impaired</u>

<u>Class 4</u>

<u>General Unsecured Claims</u>

The unsecured claims will be paid their pro rata share of $250.00 per month in 60 equal monthly payments.

<u>The Class 4 Claims are impaired</u>

Any claim in Class 4 may be paid in accordance with any agreement for waiver, deferral, installment payment or otherwise as agreed between the holder of any such claim and the Debtors in an amount less than, but not greater than, specified herein.  Any such agreement made prior to the Effective Date will be made the subject of a motion to compromise filed with the Court and notice to the creditors and all other parties in interest who have filed with the Court requests for receipt of all notices, in accordance with § 102 of the Bankruptcy Code and Bankruptcy Rules 2002 and 2019(a) and Local Rule 2002, upon five (5) days notice, without the necessity of modification of the Plan.

### III.

### <u>MODIFICATION OF PLAN</u>

The Plan may be amended or modified by the Debtors with the approval of the Court after notice and hearing.  If the Court finds after hearing and notice to any committee appointed under the Code and any other person designated by the Court that the proposed modification does not adversely change the treatment of the Claim of any Creditor or the interest of any equity security holder who has not accepted in writing any modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the Plan.

## IV.

## MEANS FOR IMPLEMENTING AND EFFECTUATING THE PLAN

Implementation of the Plan requires entry of an order by the Bankruptcy Court confirming the Plan. The Plan is to be implemented, if accepted and approved by the Bankruptcy Court, in its entire form, by the future income received by the Debtors.

## V.

## RESERVATION OF RIGHTS

Neither the filing of the Plan, nor any statement or provision contained herein, nor the taking by the Debtors or any Creditor of any action with respect to the Plan shall be deemed to be an admission against interest or be deemed to be a waiver of any rights which the Debtors might have against a Creditor, and until the Effective Date, all such rights are expressly and specifically reserved. In the event that the Effective Date does not occur, neither the Plan nor any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the reorganization.

## VI.

## REJECTION OF EXECUTORY CONTRACTS

On the Effective Date, the Debtors shall be empowered to assume or reject, within thirty (30) days, any and all executory contracts and leases not previously assumed. The Debtors will notify all parties affected by such a rejection by filing a written notice of rejection and serving such notice on those parties by certified mail, return receipt requested.

All parties to any contract rejected will have thirty (30) days from the rejection of their executory contract in which to file a Proof of Claim for damages, if any, resulting from rejection of the contract. Such claim will be subject to the limitation imposed by the Bankruptcy Code and all other applicable laws, rules and regulations. Any contracts that are not affirmatively rejected within this time period will be deemed assumed by the confirmation of this Plan.

## VII.

## <u>TRANSFER OF CLAIMS</u>

In the event that any Creditor shall transfer its Claim, it shall do so only in compliance with Bankruptcy Rule 3001, and it shall promptly notify the Debtor or Debtors in writing of such transfer.  The Debtor or Debtors shall be entitled to assume that no such transfer of any such Claim has been made by any such Creditor until after such compliance and receipt of such notice. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given, or other action taken under the Plan; and except as expressly otherwise provided in such notice, the Debtor or Debtors shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers under the Plan of the transferor with respect thereto.

## VIII.

## <u>EFFECT OF CONFIRMATION</u>

Upon date of the Final Order confirming Plan:

A.      The provisions of the Plan shall bind the Debtors and any Creditor whether or not they have accepted the Plan;

B.      Except as otherwise provided in the Plan, all of the property of the estate, including any tax attributes, shall vest in the Reorganized Debtors.

C.      Rights, Duties and Powers of the Disbursing Agent.

D.      Upon confirmation of the Plan, WYNDEHAVEN TERRACE BANQUET FACILITIES, INC. shall be discharged from any Claim that arose before the date of the Final Order confirming the Plan.  JOSEPH V. ZAPATA and MERIH O. ZAPATA shall be discharged from any Claim that arose before the date of the Final Order confirming the Plan once all Plan Payments have been made pursuant to 11 U.S.C. § 1141.

## IX.

## <u>JURISDICTION OF THE COURT</u>

The Court shall retain jurisdiction of this Chapter 11 case pursuant to and for the purposes set forth in § 1127(b) of the Code and to:

a.      determine the allowance or disallowance of Claims;

b.      fix allowances of compensation and other administrative expenses;

c.      resolve all disputes arising out of the Plan and the Order confirming the Plan;

d.      correct any defect, the cure of any omission, or reconcile any inconsistency in this Plan or the Order of Confirmation as may be necessary to carry out the purposes and intent of this Plan;

e.      modify this Plan after confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code;

f.      enter any order, including injunction, necessary to enforce the title, rights and powers of Debtors and the distributing agent and to impose such limitation, restriction, terms and conditions of such title, rights and powers as this Court may deem necessary;

g.      for such other matters as may be set forth in the Order of Confirmation.

## X.

## <u>EVENTS OF DEFAULT; ACCELERATION</u>

1.      The occurrence of any of the foregoing shall constitute an Event of Default under the Plan:

A.      Failure on the part of the Debtors to pay fully when due any payment required to be made in respect of the Plan;

B.      Failure on the part of the Debtors to perform or observe any terms or provision set forth in the Plan, which failure remains uncured for a period of fifteen (15) days after written notice thereof to the Debtors; and

C.      The submission to the holders of claims under the Plan of a report or certificate required to be submitted under the Plan in which the Debtors knowingly or fraudulently misrepresents or fails to state any material fact.

2.      If any Event of Default prior to substantial consummation of the Plan shall have occurred and be continuing, and is not cured within thirty (30) days after receipt of notice thereof, or, is not waived, in writing, by a majority of the holders of claims under the Plan, any holder of a claim under the Plan may request this Court to enter an order converting this case to a case under Chapter 7, and distributions shall thereafter be made in accordance with the priorities established by the Bankruptcy Code.  In the event that these cases are converted to cases under Chapter 7, then the property of the reorganized debtors shall be property of the Chapter 7 estate.

3.      If any holder of a claim under this Plan shall give any notice or take any other action with respect to an Event of Default or claimed Event of Default under the Plan, or if any person shall give notice to the Debtors or take any other action with respect to an Event of Default, the Debtors shall forthwith give written notice thereof to each holder of a claim describing the notice or action and the nature of the Event of Default or claimed Event of Default. All property of the Debtors as of the date of conversion shall become property of the Chapter 7 Estate under the control of the Chapter 7 Trustee.

4.      On the Effective Date, title to all assets and properties dealt with by the Plan shall vest in the Reorganized Debtors.

## MISCELLANEOUS PROVISIONS

1.      All claims and causes of action in favor of the Debtors are hereby reserved to be prosecuted after Confirmation.

2.      Whenever the word "Confirmation" is used in this Plan, it is intended to mean that date upon which the order confirming this Plan as entered by this Court becomes final and nonappealable.

3.      The Reorganized Debtors shall act as the disbursing agent under this Plan.

4.      Except as otherwise expressly provided hereinabove, the Debtors reserve the right to object to and/or defend against any and all Claims filed in this case.

5..      The priority of the liens amongst the various secured creditors shall be the same as existed on the date the Debtors filed their petitions initiating their bankruptcy cases.

16

## XII.

## **INTERIM OPERATION**

From and after the filing of this Plan and until such time as the order confirming this Plan has become final, this Plan has failed and an amended Plan is proposed and acted upon, or an appeal has been filed and disposed of, or an order of adjudication of bankruptcy proceedings is entered, the Debtors shall continue in their current status, and their financial affairs shall be continued on the terms and conditions heretofore authorized by orders of the Bankruptcy Court. When the order of Confirmation approving and confirming the Plan has become final and nonappealable, the rights and duties of the Debtors as Debtor-in-Possession appointed pursuant to order of the Bankruptcy Court shall terminate, provided that the Debtors will perform all acts and execute any and all documents, instruments and agreements which they are required to execute to consummate and carry out this Plan.

The stay of actions and lien enforcement and all other matters provided for by Bankruptcy Code § 362 shall remain effective and in full force until confirmation of this Plan.

Respectfully submitted this the 9th day of August, 2010.


/s/ Margaret M. McClure
_____
MARGARET M. MCCLURE
State Bar No. 00787997
909 Fannin, Suite 3810
Houston, Texas 77010
(713) 659-1333
(713) 658-0334 (fax)
Email:  margaret@mmmcclurelaw.com

ATTORNEY FOR DEBTOR
WYNDEHAVEN TERRACE BANQUET
FACILITIES, INC.

MILLS & HENSHAW


/s/ Corey L. Mills
_____
11767 Katy Freeway, Suite 820
Houston, Texas 77079
(281) 497-2650
(281) 497-2690 (facsimile)

ATTORNEYS FOR JOSEPH V. ZAPATA
AND MERIH O. ZAPATA